[L. A. No. 3132.   Department Two.—August 20, 1913.]

VERDI THAYER CONVERSE and THOMAS P. CONVERSE, Appellants, v. WILLIAM F. FERGUSON, and SARAH I. FERGUSON, Respondents.

LEASE—PAYMENT OF RENT IN KIND—PROCEEDS OF DAIRY—CONSTRUCTION OF LEASE.—In an action to recover the rent of a dairy ranch, which involved the issue whether the lessees had performed a covenant of the lease which authorized them, in lieu of a stipulated cash rent, to pay "one-half of the receipts of the cream obtained from milking an average of fifty cows per day," it is held, that the evidence justified the conclusion of the trial court that the lease did not require the lessees to milk average dairy cows, but that it was made in view of the existing circumstances and conditions, which would ·permit a performance of the covenant although the output of the dairy was far below the average.

ID.—EVIDENCE AS TO CHARACTER OF ADJOINING LAND.—In such action, it was not error to sustain an objection to a question asked a witness regarding the character of land occupied by him adjoining the leased property, or the number of crops raised thereon, where it had not been shown that the quality of the land on the two ranches was the same.

ID.—VALUE OF CREAM FROM AVERAGE COWS.—It was also proper to sustain an objection to a question asked a witness, notwithstanding he was a dairyman, as to the value of the cream from fifty average cows kept on the leased land during specified years, where it did not appear that he knew the market value of cream during such years. Such objection was also properly sustained, because the contract of lease did not necessarily involve the product of fifty average cows.

ID.—EXPERT EVIDENCE—PROPER CARE OF LEASED PREMISES.—Such a witness could not testify as to whether, in his opinion, the leased premises received proper care by the lessees, so far as concerned the

production of feed for milk cows, as the information sought to be elicited was not a proper subject of expert evidence.

ID.—PROBABLE RECEIPTS FROM GIVEN NUMBER OF COWS.—A witness is not qualified to testify as an expert dairyman as to the probable monthly receipts from a given number of cows on a specified tract of land, notwithstanding he is possessed of experience in the raising of live stock.

ID.—AMOUNT OF FEED RAISED—INDEFINITE QUESTION.—Where such witness was asked whether or not there was much feed or hay or grain raised on the leased property during a given year, an objection to the question on the ground of indefiniteness was properly sustained.

ID.—ADAPTABILITY OF LAND FOR PARTICULAR CROPS.—Where there was nothing in the contract of lease regarding the sort of crops the lessees were to plant, questions designed to show the adaptability of the leased premises for particular kinds of crops were incompetent.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—FORGETFULNESS OF CONVERSATIONS IN WHICH MOVING PARTY PARTICIPATED.—A new trial should not be granted on the ground of newly discovered evidence, if the evidence claimed to have been newly discovered related to conversations in which the moving party himself participated, and the only excuse for its nonproduction was that he had forgotten it until after the trial. The same rule applies to a case where he forgets to impart his knowledge to his attorney.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

H. E. Doolittle, and Doolittle & Morrison, for Appellants.

Riley & Hubbell, for Respondents.

MELVIN, J.—Plaintiffs sued alleging that defendants were indebted to Verdi Thayer Converse in the sum of $2,111.38 for the rent of certain land in the county of San Diego. Thomas P. Converse appeared as a party plaintiff because of his being the husband of Verdi Thayer Converse. The defendants answered, admitting that they had leased from the plaintiff Verdi Thayer Converse a part of the property described in the complaint, but denying any existing indebtedness for the rent thereof. Several defenses were pleaded, of which we need consider but one. The cause was

tried by the court without a jury, and judgment was rendered in favor of the defendants. From said judgment and from an order denying the motion of plaintiffs for a new trial, this appeal has been taken.

The written lease, which was duly set forth in the complaint as an exhibit, provided that the rent for the property should be one hundred and twenty-five dollars per month for the first two years, but that "in case the said lessees desired to pay said rent, by paying one-half of the receipts of the cream obtained from milking an average of fifty cows per day, that said one-half of said receipts would be received and accepted as rent for the use of said property during said two years." We have quoted from the complaint which contains the interpretation of the lease that was evidently accepted by all parties to the litigation. The complaint contained the allegation that the receipts from the cream from fifty cows per day would produce at least two hundrd and fifty dollars per month. The receipt of $638.62 from defendants is acknowledged, and the amount sued for is the difference between that sum of money and the rental which the property would produce at one hundred and twenty-five dollars per month from the time defendants took possession of it to the date of the suit. Defendants admitted that they had paid only the sum of money alleged in the complaint, but in one of the counts of their answer alleged that they had milked an average of more than fifty cows per day; had sent the total output of their dairy to W. B. Hage of San Diego, with instructions to him that he pay one-half of the entire receipts from the said cream to the credit of plaintiffs at the First National Bank of San Diego; and that these instructions had been obeyed. The court found substantially in accordance with this defense and the principal attack of appellants is upon this finding as not sustained by the evidence.

Appellants insist that the provision of the lease allowing the substitution of one-half of the product of the dairy for the rent in money contemplated the milking of fifty average dairy cows per day and applying one-half of such product to the credit of the lessor—that under usual and ordinary conditions the milking of fifty such cows per day, during the term considered, would produce eighteen thousand pounds of butter fat, while the cows milked at Ferguson's dairy only

yielded a little more than four thousand seven hundred pounds. To this contention defendants reply that the contract by its terms makes no such provision for the milking of average dairy cows; that the pasture was in poor condition, as plaintiffs well knew; that plaintiffs failed to defend the water-right mentioned in the lease, thereby allowing defendants to be deprived of sufficient water to raise enough feed to supply the deficiency of the unirrigated pasture; that the cows kept by defendants were not the best milk-producing stock, but were of the general character of cattle previously milked by plaintiffs; and that at the time the defendants entered into possession of the property they purchased from Mr. Converse forty-five milk cows and twelve heifers, all of very inferior breed for the producing of milk, with the understanding that this stock should be kept for milking purposes. The evidence given on behalf of the defendants does support these contentions and justifies the court's evident conclusion that the contract was made in view of the existing circumstances and conditions which would render the output from the dairy of defendants far below the average. There was a conflict of testimony regarding many of these matters, but we cannot say that the finding in question is unsupported.

Objection is made to several rulings made by the court during the trial.

Witness Thomas P. Converse was asked this question: "What would be the receipts per month from fifty cows per day on the property described in the lease?" One of the grounds of the objection to this question was that the witness had not been qualified as an expert. This objection was properly sustained. While the witness had said that he was possessed of experience in the raising of live stock, he had not testified to that sort of training as a dairyman which would make him an expert upon the matter treated in the question.

There was no error in sustaining the objection to the question addressed to witness Schwegel regarding the character of the land occupied by him adjoining the property of Mrs. Converse. It had not been shown that the quality of the land on the two ranches was the same, and no reason appeared why the inquiry with reference to the property of the witness should have been made. Witness Schwegel was

also asked the value of the cream from fifty average cows, properly kept on the land leased to the Fergusons during the years 1909 and 1910. It was proper to sustain the objection to this question because, while it appeared that the witness was a dairyman, it did not appear that he knew the market value of cream during the years 1909 and 1910. Besides, as we have shown in the previous discussion, the contract did not necessarily involve the product of fifty *average* cows per day. This witness was also asked this question respecting the land described in the complaint: "Did it receive proper care so far as the production of feed for milk cows is concerned, in your opinion?" A general objection to this question was sustained. In this the court committed no error. The information sought to be elicited by the question was not a proper subject of expert evidence. The witness was permitted, without objection, to testify regarding a number of facts relating to the methods of farming employed by the Fergusons. Whether he approved of those methods or not was quite beside the question at issue. Schwegel was also asked whether or not there was much feed or hay or grain raised on the property in 1909. An objection to this question on the ground that it was indefinite was properly sustained. He was also asked this question: "You cut six crops last year?" Of course the number of crops that witness cut on his land would have no bearing upon the questions here involved. He was also asked: "Is the Converse land capable of raising corn?" As there was nothing in the contract of lease regarding the sort of crops the tenants were to plant, the question was incompetent and an objection to it was correctly sustained. The same may be said of the court's ruling on the question propounded to witness Stokes: "About how many acres of corn land are there on the Converse place?" The court also with propriety excluded evidence regarding the amount of butter fat sold to Mr. Hage by McElroy Brown, the tenant who went into possession of the land after the defendants left it. Mr. Brown was also asked a question calling for his opinion with reference to the amount of grain land on the Converse place which would be subject to cultivation after sufficient pasturage had been furnished for fifty cows in an average year. This question was objectionable for the reason discussed above,—namely, the absence

of any requirement that any of the land be devoted to the raising of grain. The defendant William F. Ferguson was asked on cross-examination, "What was the character of the buildings?" (on the ranch). The inquiry was not proper cross-examination and an objection was sustained on that ground. This ruling was correct. On recross-examination Mr. Ferguson was asked this question: "What crops did you raise in the way of grain and hay on the Converse place in the year 1910?" The court sustained an objection to it on the ground that the subject had been previously covered very fully. This was a correct ruling.

In support of a motion for a new trial a number of affidavits were offered, all relating to admissions against interest by defendants. These alleged admissions were that at certain times a number of cows less than fifty were being milked by defendants (contradicting, in that regard, testimony given at the trial) and that Mr. Ferguson kept no books. The affidavits relate to times long prior to the trial and to conversations in which the plaintiffs *themselves* participated. How such matters could be "newly discovered" we fail to see. It is true that one of the attorneys of record for the plaintiffs deposed that he had not been apprised prior to the trial by his clients nor by another deponent whose affidavit appears in the record, that these conversations had taken place, and that the alleged admissions had been made; but his failure to discover such evidence is not sufficient to require the granting of a new trial. The knowledge of his clients is presumed to be his also (Spelling on New Trial and Appellate Practice, sec. 207), just as his knowledge is presumed to be theirs in matters of this sort. (Hayne on New Trial and Appeal, sec. 27.) The materiality of the alleged newly discovered evidence is very apparent. A party to an action is bound to know the materiality of testimony of which he is cognizant, except in cases of surprise at the trial, and there could have been no such surprise because the answer fully set forth the claim of defendants that they had milked an average of more than fifty cows a day. Admissions contrary to this assertion, whether of the facts involved or of the means of establishing the defense pleaded, would impress almost any one as being material. Therefore the plaintiffs may not with good grace assert either that the offered

testimony was newly discovered nor that its materiality was only made manifest by something which came as a surprise at the trial. (Hayne on New Trial and Appeal, sec. 89; *Berry* v. *Metzler,* 7 Cal. 418.) A party to an action may not excuse the production of evidence relating to a conversation in which he himself participated, on the ground that he had forgotten it until after the trial. (*Moran* v. *Abbey,* 63 Cal. 57.) And the same rule should apply to a case where he forgets to impart his knowledge to his attorney. We find no error in the court's refusal to grant a new trial.

The judgment and order are affirmed.

Lorigan, J., and Henshaw, J., concurred.